**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| Omnitek Partners LLC, | |
| Plaintiff, | **Civil Action No. 6:20-cv-437** |
| v. | |
| General Motors Company, dba GM | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Omnitek Partners LLC ("Omnitek" or "Plaintiff"), for its Complaint against

Defendant General Motors Company, ("GM" or "Defendant") alleges the following:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2.      Plaintiff Omnitek is a Limited Liability Company organized under the laws of the

State of New Jersey with a place of business at 85 Air Park Drive, Unit 3, Ronkonkoma, New

York, 11779.

3.      Omnitek is the current assignee of United States Patent No. 8,224,569 ("the '569

patent")(Exhibit A)("the patent in suit.").

4.      On or around October 14, 2005, Omnitek acquired 100% ownership of all right,

title and interest in the patent in suit, including the right to bring patent enforcement actions for

damages.  The assignment to Omnitek of ownership of the '569 patent was recorded with the

United States Patent & Trademark Office ("USPTO") on or around October 21, 2005 by virtue

- 1 -

of the assignment of the original parent application referencing all subsequent related

applications and recorded at Reel 017101, Frame 0819 of the USPTO assignment records.

5.      Defendant GM is a corporation organized and existing under the laws of

Delaware, with a principal place of business at 300 Renaissance Ctr

Detroit, MI 48243.  Upon information and belief, GM uses, sells, and offers to sell products

services throughout the United States, including in this judicial district, and introduces products

and services into the stream of commerce that incorporate infringing technology knowing that

they would be sold in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under the Patent Laws of the

United States, Title 35 of the United States Code.

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8.      Regarding Defendant GM, venue is proper within this District under 28 U.S.C. §

1400(b) because, on information and belief, GM maintains a regular and established place of

business in this District, the Autonation Chevrolet Waco located at 1625 N. Valley Mills Drive

Waco, Tx 76710 , and has committed infringing acts in this District.  These infringing acts

include at least its sales of Accused Instrumentalities in this District and also under 28 U.S.C. §

1391(b)(2) because GM sells and offers to sell products and services throughout the United

States, including in this District, and introduces products and services into the stream of

commerce and effectuates these sales knowing that the products and services would be sold in

this District and elsewhere in the United States.

9.      GM – directly or through intermediaries (including distributors, retailers, and

others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its

products in the State of Texas and this District.  GM has purposefully and voluntarily placed its

infringing products into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this District.  GM knowingly and purposefully ships infringing products into and within this District through an established distribution channel.   These infringing products have been and continue to be purchased by consumers in this District.  Upon information and belief, through those activities, GM has committed the tort of patent infringement in this District.

10.     On information and belief, Defendant is subject to this Court's general and specific personal jurisdiction because Defendant has sufficient minimum contacts within the State of Texas and this District (including via use and/or sales of Defendant's products and services), pursuant to due process and/or the Texas Long Arm Statute because Defendant purposefully availed itself of the privileges of conducting business in the State of Texas and in this District, because Defendant regularly conducts and solicits business within the State of Texas and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and this District.  Having purposefully availed itself of the privilege of conducting business within this District, Defendant should reasonably and fairly anticipate being brought into court here.

## **BACKGROUND**

### **The Invention**

11.     The Plaintiff is the owner by assignment of a portfolio of patents, including the patent described in detail in the counts below (the "Asserted Patent").  The patent relates to technology for providing driving directions, including permitting variations as to preferences in the routing provided such as, but not limited to, generating intermediate addresses in the routing provided.  A true and correct copy of the '569 patent is attached as Exhibit A.

12.     Omnitek is the rightful owner of the Asserted Patent and holds the entire right, title, and interest in the Asserted Patent.

**Advantage Over the Prior Art**

13.     The patented invention disclosed in the '569 patent provides many advantages over the prior art and in particular, allow parties to select addresses or locations to be used for guidance and generate customized routes between these addresses or locations based on a user's preferences.  For example, the inventions allow parties to generate driving instructions from a named road to an ending address or location, while also detailing that the generated route not include a specified type of road, such as an interstate.  ('569 patent at 3:32-43.)

14.     Another advantage of the patented invention is that a user of the patented invention may customize the generated directions to suit the user's particular needs for a particular trip.  For example, the patented invention allows a user to input an instruction to start from a specific nearby road, rather than including instructions from the user's current location to the specific nearby road.  ('569 patent at 3:44-64.)

15.     Yet another advantage of the patented invention is that the user may select starting and ending addresses or locations on a map without any associated text entry.  For example, the patented invention allows a user to click on a starting address or location on a map to indicate the directions should be generated starting from that first clicked location, and then clicking on an ending address or location on the map to indicate the directions generated should conclude at that second clicked location.  (*See* '569 patent at 2:32-37.)

16.     Because of at least the above described significant advantages that can be achieved through the use of the patented invention, Omnitek believes that the '569 patent presents commercial value for companies like GM.

**Technological Innovation**

17.     The patented invention disclosed in the and '569 patent resolves technical problems related to computerized navigation technologies, particularly problems related to the lack of customization options available to suit the particular needs or preferences of a user.  As the '569 patent explains, it was known in the art how one may typically obtain driving directions from software or at an Internet website.  ('569 patent at 1:19-22.)  Typically, a user would enter a starting address and an ending address into a navigation service which would then interpret these addresses to generate driving directions to be displayed to the user.  ('569 patent at 1:22-24.)  In order to generate these directions, these services used a system to determine the best routes for the user.  ('569 patent at 1:24-26.)  This system may include a weighting system that assigned certain weights to different types of roads, including small roads, secondary roads, highways, or interstates.  ('569 patent at 1:26-30.)  Depending on the distance between the provided addresses, the services may have generated directions and routes including travel by way of highways.  ('569 patent at 1:30-32.)

18.     Although these prior services were useful in providing these directions, the services did not allow a user to customize the directions generated to suit the user's particular needs or preferences.  ('569 patent at 1:32-34.)  As such, there existed a need for a system or method to allow the user to enter very specific instructions for starting and ending addresses, including the setting of user preferences.

19.     The invention described in the '569 patent offers an improved method for electronically generating driving directions.  ('569 patent at 1:40-41.)  The patented invention improved upon earlier services and methods of the prior art by indicating one or more preferences for the directions or route to be generated.  (*See* '569 patent at 3:32-4:29.)  In

particular, the patented invention allows a user to set preferences, including a preference to use no roads of a particular type, ('569 patent at 3:41-43,) or a preference to start the driving directions from a particular road ('569 patent at 3:65-4:4.)

20.     Another limitation in the prior art was the reliance on the requirement of text in describing the starting and ending addresses.  The patented invention overcomes this limitation by allowing the user to select or indicate starting and ending locations by selecting these locations on a map using any of a plurality of gestures, including clicking and dragging.  (*See* '569 patent at 2:32-37.)

21.     The claims of the '569 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '569 patent recite one or more inventive concepts that are rooted in computerized navigation technologies, and overcome problems specifically arising in the realm of these technologies.

22.     The claims of the '569 patent recite an invention that is not merely the routine or conventional use of computerized navigation technology.  Instead, the invention makes it possible to interact the navigation in a way that allows a user to customize the generated route according to the user's preferences.  The claims of the '569 patent thus specify how navigation input, output, and system devices are manipulated to yield a customized navigation experience based on the entries of the user.

23.     The technology claimed in the '569 patent does not preempt all ways of using interactive navigation technology, nor preempt the use of any well-known navigation technology, nor preempt any other well-known or prior art technology.

24.     The claims of the '569 patent are not directed to any "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor are any of the claims "a building block of the modern economy."

25.     The claims of the '569 patent are directed toward a solution rooted in computer technology and uses technology, unique to computers and networks, to overcome a problem specifically arising in the realm of computerized navigation technologies.

26.     The claims of the '569 patent are not directed at a mere mathematical relationship or formula.

27.     The claims of the '569 patent cannot be performed by a human, in the human mind, or by pen and paper.

28.     Accordingly, each claim of the '569 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

29.     Plaintiff is the assignee and owner of the right, title, and interest in, and to, the '569 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,224,569

30.     The allegations set forth in the foregoing paragraphs 1 through 29 are incorporated into this First Claim for Relief.

31.     On July 17, 2012, the United States Patent and Trademark Office duly and legally issued the '569 patent.  The '569 patent is titled "Software Based Driving Directions."  The application leading to the '569 patent was filed on December 22, 2009.  A true and correct copy of the '569 patent is attached hereto as Exhibit A.

32.     Upon information and belief, GM directly infringes and continues to directly infringe at least claim 2 of the '569 patent, in the United States, under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by, among other things, making, using, selling, offering to sell, importing and/or providing and/or causing to be used a method for electronically generating driving directions without text entry in its MyLink technology found in its vehicles. (*See* source: https://www.chevrolet.com/owners/mylink-vehicle-technology, last accessed and downloaded May 28, 2020,) along with related systems and software for access and use of such methods (the "Accused Instrumentalities") as in claim 2 of the '569 patent.  (*See* Omnitek's Claim Chart for claim 2 of the '569 patent, Ex. B at 1-21.)  GM describes the system as one that allows a user to "[n]avigate confidently at the push of a button.  Simply tell your Advisor where you want to go, and get directions downloaded to your vehicle — a voice will call out every turn."  (Source: https://www.chevrolet.com/owners/mylink-vehicle-technology, last accessed and downloaded May 28, 2020.

33.     On information and belief, Defendant GM is a for-profit organization with revenues of approximately $137 billion U.S.D. per year.  Moreover, Defendant, its employees and/or agents make, use, sell, offer to sell, import, and/or provide and/or cause to be used the Accused Instrumentalities for Defendant's partners and customers, leading to direct or indirect revenues and profit.  On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, Defendant would be at a disadvantage in the marketplace and would generate less revenue and profit overall.

34.     In particular, claim 2 of the '569 patent generally recites a method for electronically generating driving directions without text entry, the method comprising indicating a starting address or starting location on a map without text entry; indicating an ending address

or ending location on a map without text entry; generating driving directions based on the indicated starting address or starting location and ending address or ending location; and indicating an intermediate address or location on the map where the generating generates driving directions from the starting address or location to the intermediate address and location and from the intermediate address or location to the ending address or location, wherein the intermediate address is indicated on a different map as one of the starting and ending address. (Ex. B at 6-21.)

35.    Use of the Accused Instrumentalities by Defendant's partners, customers, and/or end users infringes claim 2 of the '569 patent through a combination of features which collectively practice each limitation of claim 2. (Ex. B at 5-13.)

36.    GM provides a method for electronically generating driving directions without text entry that comprises both indicating a starting address or starting location and an ending address or ending location on a map without the use of text entry. (Ex. B at 6-15.) Through the GM system, a user may indicate its own address as the starting address by activating the MyLink navigation system. (Ex. B at 6-8 *see also* https://www.youtube.com/watch?v=U4bdix67dC0 and https://www.johnhiesterchevy.com/Navigation, last accessed and downloaded May 28, 2020.) Once activated, the user then selects an ending address by, in one example, selecting a "Recent" icon to bring up a list of addresses that a user has recently visited, allowing the user to then select one of these addresses without entering text. (Ex. B at 9-15; *see also* https://www.youtube.com/watch?v=U4bdix67dC0, last accessed and downloaded May 28, 2020.)

37.    The GM method also includes generating driving directions based on the indicated starting address or location and ending address or ending location. (Ex. B at 16-17; *see*

*also* https://www.youtube.com/watch?v=U4bdix67dC0, last accessed and downloaded May 28, 2020.)

38.     The GM method also provides indicating an intermediate address or location on the map where the generating generates driving directions from the starting address or location to the intermediate address and location and from the intermediate address or location to the ending address or location.  (Ex. B at 18-19.)  For example, a user may "add a stop along [the user's] current route," and the user may "search for POIs along [the user's] route."  (Ex. B at 18; *see also* https://www.johnhiesterchevy.com/Navigation, last accessed and downloaded May 28, 2020.)  Once received, the MyLink system generates and determines driving directions from the starting address, to the waypoint, and then from that waypoint to the ending address.  (Ex. B at 18-19; *see also* https://www.johnhiesterchevy.com/Navigation, last accessed and downloaded May 28, 2020.)

39.     The method provided by GM also provides cases wherein the intermediate address is indicated on a different map as one of the starting and ending address.  (Ex. B at 20-21.)  Once received, the MyLink system generates and determines driving directions from the starting address, to the waypoint, and then from that waypoint to the ending address, with the maps being displayed on different maps, sequentially.  (*Id.*; *see also* source: https://www.youtube.com/watch?v=U4bdix67dC0 and https://www.johnhiesterchevy.com/Navigation, last accessed and downloaded May 28, 2020.)

40.     Use of the Accused Instrumentalities by Defendant's partners, customers, and/or end users infringes claim 2 of the '569 patent through a combination of features which collectively practice each limitation of claim 2.  (*See,* Ex. B at 1-21.)

41.     On information and belief, these Accused Instrumentalities are used marketed, provided to, and/or used by or for each of Defendant's partners, clients, customers, and end users across the country and in this District.

42.     Defendant was made aware of the '569 patent and its infringement thereof at least as early the filing of this Complaint.

43.     Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the '569 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or conscious blindness, actively aiding and abetting others to infringe, including but not limited to each of Defendant's partners, clients, customers, and end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least one claim of the '569 patent.

44.     In particular, GM's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by GM or by distributing the Accused instrumentalities and providing instruction materials, training, and services regarding the Accused Instrumentalities which actively induce a user of the GM system to infringe the Asserted Claims.   For example, GM provides potential users with detailed instruction materials on how to operate the MyLink system in a way that infringes at least one claim of the '569 patent.  (Source: https://my.chevrolet.com/learn/navigation, last accessed and downloaded May 28, 2020.)

45.     In addition, on information and belief, GM encourages its employees, contract workers, customers, and other third parties to use the Accused Instrumentalities.  (*See* https://www.chevrolet.com/owners/mylink-vehicle-technology;

https://my.chevrolet.com/learn/navigation; and https://www.johnhiesterchevy.com/Navigation; all last accessed and downloaded May 28, 2020.)

46.   Additionally, on information and belief, GM promotes the Accused Instrumentalities through advertising.  (*See* https://www.chevrolet.com/owners/mylink-vehicle-technology and https://www.johnhiesterchevy.com/Navigation; all last accessed and downloaded May 28, 2020.)

47.   GM further provides technical support to help users of the Accused Instrumentalities address technical concerns.  (Source: https://www.youtube.com/watch?v=U4bdix67dC0; https://www.chevrolet.com/owners/mylink-vehicle-technology; https://my.chevrolet.com/learn/navigation; and https://www.johnhiesterchevy.com/Navigation, all last accessed and downloaded May 28, 2020.)

48.   Upon information and belief, GM has engaged in such actions with specific intent to cause infringement or with conscious blindness to the resulting infringement because GM has had actual knowledge of the '569 patent and that its acts were inducing the infringement of the '569 patent since at least the date GM received notice by this Complaint that such activities infringed the '569 patent.

49.   Upon information and belief, Defendant is liable as a contributory infringer of the '569 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States computerized navigation technologies, including firmware, software and/or code with instructions for following the methods of the Asserted Claims in for operating the MyLink system in the GM cars, that is  especially made or adapted for use in an infringement of the '569 patent.  The Accused Instrumentalities are a material component for use in practicing the '569

- 12 -

patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

50.     Defendant GM was made aware of the '569 patent and its infringement thereof at least as early as the filing and service of this Complaint.  Despite Plaintiff's notice to GM by this Complaint regarding the '569 patent, the Defendant continues to infringe the '569 patent.

51.     Upon information and belief, since at least the time it received notice by this Complaint, GM's infringement has been and continues to be willful.

52. Plaintiff Omnitek has been harmed by GM's infringing activities with respect to the '569 patent.

53.     Omnitek reserves the right to modify its infringement theories as discovery progresses in this case.  It shall not be estopped for purposes of its infringement contentions or its claim constructions by the claim charts it provides with this Complaint.  Omnitek intends the claim chart (Exhibit D) for the '569 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Omnitek's preliminary or final infringement contentions or preliminary or final claim construction positions.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for itself and against Defendant as follows:

A.     An adjudication that Defendant has infringed the '569 patent;

B.     An award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement of the '569 patent, and any continuing or future infringement

through the date such judgment is entered, including interest, costs, expenses and an accounting

of all infringing acts including, but not limited to, those acts not presented at trial;

      C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of

Plaintiff's reasonable attorneys' fees; and

      D.     An award to Plaintiff of such further relief at law or in equity as the Court deems

just and proper.


Dated: May 29, 2020                    DEVLIN LAW FIRM LLC

                                    */s/ Alex Chan*_____
                                      Timothy Devlin (*pro hac vice* to be filed)
                                      tdevlin@devlinlawfirm.com
                                      Patrick R. Delaney (*pro hac vice* to be filed)
                                      pdelaney@devlinlawfirm.com
                                      Alex Chan (Texas Bar No. 24108051)
                                      achan@devlinlawfirm.com
                                      Cory Edwards (*pro hac vice* to be filed)
                                        cedwards@devlinlawfirm.com
                                        1526 Gilpin Ave.
                                      Wilmington, Delaware 19806
                                      Telephone: (302) 449-9010
                                      Facsimile: (302) 353-4251

                                      *Attorneys for Plaintiff,*
                                      *Omnitek Partners LLC*